UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

JULIO CESAR ROSADO,

                      Plaintiff,

                                                **MEMORANDUM & ORDER**
           v.                                         17−CV−2035 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

-----------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Julio Cesar Rosado, proceeding *pro se*, brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of his claim for Disability Insurance Benefits ("DIB"). Pending before the Court is the unopposed motion of the Acting Commissioner of Social Security ("Commissioner") for judgment on the pleadings. (Dkt. 10.) For the reasons set forth below, the Court denies the Commissioner's motion and remands this case for further proceedings consistent with this Order.

## BACKGROUND

**I.    PROCEDURAL HISTORY**

On February 11, 2014, Plaintiff filed an application for DIB, claiming that he was disabled since December 17, 2013. (Tr. 108-114.)[1] Plaintiff's claim was initially denied on March 26, 2014. (Tr. 47-52.) After his claim was denied, Plaintiff requested and appeared for a hearing before an administrative law judge ("ALJ") on September 1, 2015. (Tr. 24-46.) By decision dated October 13, 2015, ALJ Mark Solomon found that Plaintiff was not disabled within the meaning of

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript.

the Social Security Act ("the Act") from December 17, 2013, his alleged onset date, through the date of the ALJ's decision. (Tr. 7-21.) On March 29, 2017, Plaintiff requested a review of the decision by the ALJ and the Appeals Council denied this request for review. (Tr. 1-4.) Based upon this denial, Plaintiff filed an action in this Court on April 5, 2017 seeking reversal or remand of the ALJ's October 13, 2015 decision.

## II.  STANDARD OF REVIEW

Unsuccessful claimants for DIB under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (alterations and internal quotation marks omitted)). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation omitted). However, "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013).

## III. ELIGIBILITY STANDARD FOR SOCIAL SECURITY DISABILITY BENEFITS

To receive DIB, claimants must be disabled within the meaning of the Act. Claimants establish disability status by demonstrating an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). The claimant bears the initial burden of proof on disability status and must demonstrate disability status by presenting medical signs and findings, established by "medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(D). The ALJ, however, has an affirmative obligation to develop the administrative record. *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). This means that the ALJ must seek additional evidence or clarification when the claimant's medical reports contain conflicts or ambiguities, if the reports do not contain all necessary information, or if the reports lack medically acceptable clinic and laboratory diagnostic techniques. *Demera v. Astrue*, 12-CV-432, 2013 WL 391006, at *3 (E.D.N.Y. Jan. 24, 2013).

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps in the inquiry; the Commissioner bears the burden in the final step. *Talavera*, 697 F.3d at 151. First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the claimant is not engaged in "substantial gainful activity," the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is determined to be severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20

C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled within the meaning of the Act. But if the impairment is severe, the ALJ proceeds to the third step, which considers whether the impairment meets or equals one of the impairments listed in the Act's regulations (the "Listings"). 20 CFR § 404.1520(a)(4)(iii). If the ALJ determines at step three that the claimant has one of the listed impairments, then the ALJ will find that the claimant is disabled under the Act. But if the claimant does not have a listed impairment, the ALJ must determine the claimant's "residual functional capacity" ("RFC") before continuing with steps four and five.

The claimant's RFC is an assessment that considers the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." 20 C.F.R. § 404.1545(a)(1). The ALJ will then use the RFC determination in step four to determine if the claimant can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the answer is yes, the claimant is not disabled. Otherwise the ALJ will proceed to step five where the Commissioner then must determine whether the claimant, given the claimant's RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise the claimant is disabled and is entitled to benefits. *Id.*

## IV. RELEVANT FACTS AND MEDICAL RECORDS

Because the Commissioner's motion is unopposed, the Court adopts the facts set forth in the Commissioner's moving brief as if set forth fully herein (*see* Dkt. 11 at 8-16 (setting forth relevant non-medical and medical evidence)); Dkt. 8 (Administrative Transcript)), and will recite the facts only as relevant to the Court's decision. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 197 (2d Cir. 2014) (noting that in the case of an unopposed motion, "there is no need for a district court to

robotically replicate the defendant-movant's statement of undisputed facts and references to the record or otherwise serve as an assistant to our law clerks") (citation omitted). Though an unopposed motion for judgment on the pleadings "allow[s] the district court to accept the movant's factual assertions as true," the Court must independently review the record in order to "determine from what it has before it whether the moving party is entitled to [] judgment [on the pleadings] as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citation and internal quotation marks omitted)).

## V. THE ALJ'S DECISION

Plaintiff and his counsel appeared before ALJ Solomon on September 1, 2015. (Tr. 24-46.) Plaintiff testified that he was diagnosed with prostate cancer in February 2013 and began treatment later that year. (Tr. 31.) Plaintiff stated that he retired in August 2014 but had not worked since December 2013. (Tr. 30.) Plaintiff reported that he had frequent urination, pain in his prostate and joints, and had trouble sitting or standing for more than an hour. (Tr. 33-38.) Dr. Pat Greene, a vocational expert, testified at the hearing and noted Plaintiff's former work as a food service supervisor. (Tr. 40-45.) Dr. Greene stated that if claimant had the ability to perform either medium or light work, he would be able to able to perform his past work as a food service supervisor. (Tr. 43.) Yet Dr. Greene explained that even if Plaintiff could perform the full range of light or medium work but could not maintain a regular schedule, he would not be able to do his past work or any other jobs. (Tr. 44.) Dr. Greene further testified that Plaintiff's job skills were not transferrable at his age for a vocational adjustment to sedentary work. (Tr. 43-44.)

The ALJ's October 7, 2015 decision followed the evaluation process established by the SSA to determine whether an individual is disabled. (Tr. 7-21.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December

5

17, 2013. (Tr. 12-17.) At step two, the ALJ determined that Plaintiff suffered from prostate cancer, diverticulitis, hypertension, and obesity. (Tr. 12-17.) The ALJ determined that these impairments were not severe because they did not significantly limit his ability to perform basic work activities for 12 consecutive months. (Tr. 12-17.) In an alternative finding, the ALJ found that Plaintiff had a RFC to perform the full range of light or medium work and could perform his past relevant work as a food service supervisor. (Tr. 17.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 17.) As such, the ALJ found that Plaintiff had not been under a disability under the Act. (Tr. 18.)

## DISCUSSION

The Court remands the Commissioner's decision on two grounds. First, the ALJ failed to offer reasons for giving "partial weight" to the medical opinion of Plaintiff's treating oncologist, Dr. Sean McBride. The ALJ also failed to seek a medical opinion from Dr. Igor Grossman, another treating physician who assessed Plaintiff's gastrological issues. Second, the ALJ failed to develop the record with respect to Plaintiff's condition of diverticulitis and failed to account for additional medical records from Plaintiff's primary care doctor at the Memorial Sloan Kettering Hospital. The Court will address each of these grounds in turn.

### I. The ALJ Failed to Follow the Treating Physician Rule

In his decision, the ALJ considered one medical opinion, that of oncologist Sean McBride, and did not obtain opinions from Plaintiff's other treating physicians, including gastroenterologist Igor Grosman. Dr. McBride is a physician at Memorial Sloan Kettering Hospital who treated Plaintiff's prostate cancer and met with Plaintiff at least seven times between October 2013 and November 2014. (*See* Tr. 214, 216, 221, 244, 245, 247.) In February 2014, Dr. McBride opined, in relevant part, that Plaintiff was suffering effects of radiation therapy from prostate cancer and

6

would need to be excused from work for two months while he completed his treatment and recuperated. (Tr. 229.)

The ALJ, however, gave only "partial weight" to the opinion of Dr. McBride, explaining:

> Although Dr. McBride examined the claimant and as the claimant's treating doctor, he was in a good position to assess the claimant's functional limitation, Dr. McBride's opinion is of little probative value to the present assessment as to the claimant's residual functional capacity and the determination of whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy as is required by the regulations.

(Tr. 17.)

Under the "treating physician rule," an ALJ must give "more weight to medical opinions" of a claimant's treating physician when determining if the claimant is disabled. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Specifically, the rule directs the agency to give "controlling weight" to a treating physician's medical opinion as to the nature and severity of a claimant's impairments if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id. see also* 20 C.F.R. § 404.1527(d)(2). This is particularly true when a Plaintiff is *pro se*. As this court explained in *Peed v. Sullivan*,

> What is valuable about the perspective of the treating physician—what distinguishes him [or her] from the examining physician and from the ALJ—is his [or her] opportunity to develop an informed opinion as to the physical status of a patient. To obtain from a treating physician nothing more than charts and laboratory test results is to undermine the distinctive quality of the treating physician that makes his [or her] evidence so much more reliable than that of a examining physician who sees the claimant once and who performs the same tests and studies as the treating physician. . . . Thus, when the claimant appears pro se, the combined force of the treating physician rule and of the duty to conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability.

778 F.Supp. 1241, 1246 (E.D.N.Y. 1991).

If the ALJ does not give controlling weight to a treating physician's opinion, the ALJ must provide "good reasons" for the weight given to that opinion, *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004), in light of the following factors: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) the "relevant evidence . . . particularly medical signs and laboratory findings," supporting the opinion; (4) the "consistency of the opinion with the record as a whole"; and (5) "whether the physician is a specialist in the area covering the particular medical issues," *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

Here, the ALJ did not address the factors required to determine the proper weight to assign to Dr. McBride's opinion. Beyond the ALJ's conclusory statement that "Dr. McBride's opinion is of little probative value to the present assessment as to the claimant's residual functional capacity and the determination of whether the claimant is able to perform either his past relevant work or other work," there is no indication in the opinion that the ALJ considered the requisite factors. The ALJ briefly acknowledged the existence of a "treating" relationship between Plaintiff and Dr. McBride, but does not appear to have considered the length of the treatment relationship, frequency of examination, the nature and extent of the treatment relationship, or Dr. McBride's level of specialization in cancer treatment. Indeed, the Record reflects that Plaintiff visited Dr. McBride frequently for tests, biopsies, consultations, and other procedures specifically geared to treat Plaintiff's ongoing issues related to prostate cancer. The Second Circuit has held that the ALJ must "explicitly consider" these factors, *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013), which plainly did not occur in this case. *See Norman v. Astrue*, 912 F. Supp. 2d 33, 41–42 (S.D.N.Y. 2012) (ALJ's conclusion that treating physician's opinion could not "be afforded great weight" and failure to apply the statutorily required factors was sufficient to require remand).

Additionally, the ALJ did not consider the findings in any capacity of Dr. Igor Grosman, an attending gastroenterologist at the Be Well Primary Health Care Center. Dr. Grosman treated Plaintiff for abdominal issues, including diverticulitis and bowel pain, on at least four occasions between May 2014 and September 2015. (*See* Tr. 248, 250, 252, 253, 275.) While Dr. Grossman's findings were equivocal and, on their face, might not appear to support Plaintiff's claims about the severity of his condition, that fact alone is insufficient to satisfy the requirements of the treating physician rule, particularly where the claimant is *pro se*. Considering the "combined force of the treating physician rule and the duty to conduct a searching review," the ALJ did not make "every reasonable effort" to consider the findings of Dr. Grosman. *Peed*, 778 F.Supp. at 1246. The ALJ did not even mention Dr. Grosman by name in his decision. The ALJ only briefly addressed Plaintiff's diverticulitis, noting that in 2012 the "attending doctor"—Dr. Grosman—diagnosed Plaintiff's colon polyp and abdominal pain and two years later in 2014 diagnosed Plaintiff with diverticulitis. (Tr. 16.) This conclusory summary of Plaintiff's hospital visits does not satisfy the requirements of the treating physician rule. The ALJ's failure to develop the record by seeking a report from Dr. Grosman about the extent of Plaintiff's abdominal issues constitutes sufficient grounds for remand. *See Lamorey v. Barnhart*, 158 Fed. Appx. 361, 362 (2d Cir. 2006) (where ALJ fails to adequately develop the record by requesting treating physician's notes, remand for further proceedings is usually appropriate).

**II.    The ALJ Failed to Develop the Record**

The ALJ found that Plaintiff's prostate cancer, diverticulitis, hypertension, and obesity are medically determinable impairments. (Tr. 13.) Plaintiff was diagnosed with diverticulitis in May of 2014. (Tr. 231-234.) That same month, Dr. Grosman operated on Plaintiff to remove a polyp in the sigmoid colon and also diagnosed non-neoplastic large bowel mucosa. (Tr. 294.) Plaintiff

9

returned to Dr. Grosman for follow up in June 2014. (Tr. 250-51.) Dr. Grosman treated Plaintiff again in January 2015 for lower abdominal pain and constipation. The ALJ stated in his decision that Plaintiff failed to show that these impairments were non-severe and caused more than a minimal limitation in performing basic work activities. (Tr. 13-14.)

An ALJ has an affirmative duty to develop the medical record, even for claimants represented by counsel, and to seek out further information where evidentiary gaps exist, or where the evidence is inconsistent or contradictory. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); *Nusraty v. Colvin*, 213 F. Supp. 3d 425, 442 (E.D.N.Y. 2016) (the ALJ had an "affirmative duty" to develop the record and "should have followed up with [the treating physicians] to request supporting documentation or to obtain additional explanations for [their] findings."). Proceedings for benefits under the Act are not to be treated as adversarial as is the case with other similar civil or criminal proceedings. If the record presents "a complete medical history", the ALJ need not seek additional information. *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). Nonetheless, remand is appropriate if the ALJ fails to develop the record. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).

The question of whether there is a fully developed record "dovetails with the 'treating physician rule.'" *Swanson v. Colvin*, 12-CV-645S, 2013 WL 5676028, at *5 (W.D.N.Y. Oct. 17, 2013) (quoting 20 C.F.R. § 404.1527(d)(2)). As courts in this Circuit have previously observed, "it is unreasonable to expect a physician to make, on his own accord, the detailed functional assessment demanded by the Act in support of a patient seeking SSI benefits." *Ubiles v. Astrue*, 11-CV-6340T, 2012 WL 2572772, at *9 (W.D.N.Y. July 2, 2012). As such, where a record contains no formal RFC assessments from a treating physician and does not otherwise contain sufficient evidence (such as well-supported and sufficiently detailed informal RFC assessments)

from which the petitioner's RFC can be assessed, an "obvious gap" exists and the ALJ is obligated to further develop the record. *See Iacobucci v. Commissioner*, 14-CV-1260, 2015 WL, 4038551 at *4 (W.D.N.Y. June 30, 2015).

As stated above, the ALJ did not consider the opinion of treating physician Igor Grosman. In determining Plaintiff's RFC, the ALJ was required to consider all medically determinable impairments, even those that are not "severe." 20 C.F.R. § 416.945(a). The ALJ's failure to develop the record regarding Plaintiff's impairment of diverculitis "dovetails" with the treating physician rule in this case. On this issue, the ALJ should have developed the record by either seeking the opinion of the treating physician Dr. Grosman or retaining a qualified expert. *See Burger v. Astrue*, 282 F. App'x 883, 885 (2d Cir. 2008) ("Indeed, the relevant regulations specifically authorize the ALJ to pay for a consultative examination where necessary to ensure a developed record."). Since the record contains no formal or informal RFC assessments from Plaintiff's treating physicians, an "obvious gap" exists that the ALJ was required to address by developing the record. *Rosa v. Callahan*, 168 F.3d at 78–83 (remanding with specific instructions to, among other things, secure additional medical records, request an explanation from a treating physician regarding his disability diagnosis, and reassess the claimant's testimonial credibility). On remand, the SSA must re-evaluate Plaintiff's RFC, taking into account Plaintiff's diverticulitis and other non-severe medical impairments, such as hypertension and obesity, that the ALJ failed to recognize in step two of his evaluation.

Furthermore, the record in this case does not contain all of the medical documents from Memorial Sloan Kettering Hospital, where Plaintiff was treated between 2013 and 2015. The ALJ stated, "At the hearing, I inquired of the claimant's attorney regarding additional medical records or outstanding request for medical records. The claimant's attorney indicated that there were

outstanding requests from the claimant's primary care doctor and from Memorial Sloan Kettering Hospital." (Tr. at 10.) However, the ALJ has a duty to make a good faith attempt to obtain the missing records and reports, and failing that, to order whatever consultative examinations might be appropriate to cover the gap. *See Apolito v. Astrue*, 11-CV-1065, 2012 WL 6787365, at *4 n. 5 (N.D.N.Y. Nov. 5, 2012) (stating that the ALJ has an independent obligation to request medical records). On remand, the SSA should consider all new and material evidence to the extent it relates to the period on or before the date of ALJ's decision. To the extent that there is new and material evidence, the SSA should specifically address that evidence in accordance with the treating physician rule, as discussed above.

## CONCLUSION

For the reasons set forth above, the Court denies the Commissioner's motion for judgment on the pleadings. The Commissioner's decision is remanded for further consideration consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: Brooklyn, New York
      May 16, 2018